16 U.S. 274 (____)
3 Wheat. 274
CRAIG et al.
v.
RADFORD.
Supreme Court of United States.

THIS cause was argued at the last term, by M.D. Hardin and Talbot, for the appellant, and by B. Hardin, for the respondent.
March 12th, 1818. WASHINGTON, Justice, delivered the opinion of *595] *the court.
This is an appeal from a decree of the Circuit Court for the district of Kentucky, made in a suit in chancery, instituted by the appellee, against the appellants, whereby the latter were decreed to convey to the former certain parts of a tract of land, granted to them by the Commonwealth of Virginia, to which the appellee claimed title, under a junior patent, founded on a prior warrant and survey.
The warrant to William Sutherland (under whom the appellee claims) bears date the 24th of January 1774, and was issued by the governor of Virginia, by virtue of the proclamation of the king of Great Britain, of 1763. Under this warrant, 1000 acres of land, lying in Fincastle county, on the south side of the Ohio river, were surveyed, on the 4th day of May 1774, by Hancock Taylor, deputy-surveyor of that county, and a grant issued for the same, by the Commonwealth of Virginia, to the said William Sutherland, bearing date the 5th of August 1788. The appellee derives his title, as devisee under the will of his father, William Radford, to whom the said tract of land was conveyed, by William Sutherland, on the 13th of February 1799. The appellants claim parts of the aforesaid tract of land, under entries made upon treasury-warrants, in the year 1780, which were surveyed in 1785, and patented prior to the 26th of May 1788.
It is admitted by the parties, 1. That William Sutherland was a native subject of the king of Great Britain, and that he left Virginia, prior to the *596] year 1776, and has never since returned to the United *States. 2d. That Hancock Taylor was killed by the Indians, in 1774, and that he never did return the surveys made by him to the office of Preston, the principal surveyor of Fincastle county, but that A. Hemptonstrall, one of the company, took possession of his field-notes, after his death, and lodged them in Preston's office; and that it was Taylor's usual practice to mark all the corners of his surveys.
The correctness of the decree made in this cause is objected to on various grounds. 1st. Because it does not appear that Hancock Taylor had in his possession, or under his control, a warrant, authorizing him to execute *275 this survey for William Sutherland. 2d. Because there is not only an absence of all evidence to prove that the survey, for Sutherland, was made and completed on the ground, but that it appears, from the evidence of Hemptonstrall, that no such survey was actually made. This witness states, that he attended Hancock Taylor, on this survey, as a marker, and sometimes as a chain-carrier. He proves the beginning corner, and the first five lines of the survey, ending at four chestnut trees, the mark of which lines were plainly discernible, when this tract was surveyed, under an order of the circuit court, made in this cause. But he adds, that the subsequent lines of the survey were not run; and the surveyor who executed the order of the circuit court reports, that he met with no marked line, or corner trees, after he left the four chestnuts. 3d. It is objected, in the third place, that the survey, *not having been completed by the deputy-surveyor, the court ought [*597 to infer, that the lines actually run were merely experimental; and in such a case, it is contended, that the principal surveyor could not make, and certify a plan of the survey on which a grant could legally be founded.
It appears to the court, that these objections were fully examined and overruled in the case of Taylor and Quarles v. Brown, 5 Cranch 234. It was there decided, 1. That, if, in point of law, the warrant must be lodged in the office of the surveyor, at the time when the survey is made, his certificate, which states that the survey was made by virtue of the governor's warrant, and agreeable to his majesty's royal proclamation of 1763, is sufficient evidence that the warrant was in his possession at that time. In this case, the warrant, under which Sutherland's survey was made, is described in the certificate, with sufficient certainty to prove that the officer, in making the survey acted under its authority. 2. It was decided, that the 6th section of the act of Virginia, passed in the year 1748, entitled, "an act directing the duty of surveyors of lands," upon which the second objection made in that case, and in this, is founded, is merely directory to the officer, and that it does not make the validity of the survey to depend upon the conformity of the officer to its requisitions. This construction of the above section appears to the court to be perfectly well founded. The owner of the warrant has no power to control the conduct of the surveyor, whose duty it is to execute it, and it would therefore be unreasonable, to deprive him of *the [*598 title which the warrant confers upon him, on account of the subsequent neglect of that officer. If the omission of the surveyor to "see the land plainly bounded by natural bounds or marked trees," which the law imposes upon him as a duty, cannot affect the title of the warrant-holder, it would follow, that his omission to run all the lines of the survey on the ground, which the law does not in express terms require him to do, ought not to produce that effect. If the surveyor, by running some of the lines, and from adjoining surveys, natural boundaries, or his personal knowledge of the ground, is enabled to protract the remaining lines, so as to close the survey, no subsequent locator can impeach the title founded upon such survey, upon the ground, that all the lines were not run and marked. The legisture may undoubtedly declare all such surveys to be void; but no statute to this effect was in force in Virginia, at the time when this survey was made.
3. The third objection made to this decree appears to be substantially removed, by the opinion of this court, on the third point in the case above referred to. It was there decided, that the survey, though in fact made by *276 the deputy-surveyor, was, in point of law, to be considered as made by the principal, and consequently, that his signature to the plat and certificate was a sufficient authentication of the survey, to entitle the person claiming under it to a grant.
As to the distinction taken at the bar between that case and this, upon the ground that in this, the survey was merely experimental, and was not intended *599] to be made in execution of the warrant, there is certainly *nothing in it. It is, by acts, that the intention of men, in the absence of positive declarations, can best be discovered. The survey made by Taylor was adopted by the principal surveyor, as one actually done in execution of the warrant to Sutherland, and it would be too much for this, or any other, court to presume, that a contrary intention prevailed in the mind either of the principal or deputy-surveyor, and on that supposition to pronounce the survey invalid.
The last objection made to this decree is, that as a British subject, William Sutherland could not make a legal title to this land, under the state of Virginia, and consequently, that the grant to him in 1788 was void, and was not protected by the treaty of 1794, between the United States and Great Britain. The decision of this court in the case of Fairfax's devisee v. Hunter's lessee (7 Cranch 603), affords a full answer to this objection. In that case, the will of Lord Fairfax took effect in the year 1781, during the war, and Denny Martin, the devisee under that will, was found to be a native-born British subject, who had never become a citizen of any of the United States, but had always resided in England. It was ruled in that case, 1st. That although the devisee was an alien enemy, at the time of the testator's death, yet he took an estate in fee, under the will, which could not, on the ground of alienage, be divested, but by inquest of office, or by some legislative act equivalent thereto. 2d. That the defeasible title thus vested in the *600] alien devisee was completely *protected and comfirmed by the ninth article of the treaty of 1794. These principles are decisive of the objection now under consideration. In that case, as in this, the legal title vested in the alien, by purchase, during the war, and was not divested by any act of Virginia, prior to the treaty of 1794, which rendered their estates absolute and indefeasible.
Decree affirmed, with costs.